UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, The Chicago Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, not individually, But as Administrator of the Funds, <br><br>    Plaintiffs, <br><br> v. <br><br>RAI CONCRETE, INC., MONDI CONSTRUCTION, INC., K&N SERVICES, INC., CARMELA RAIMONDI, and NICOLA RAIMONDI, <br><br>    Defendants. | No. 1:17-CV-08748 <br><br> Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

  This case was brought by an assortment of pension and welfare funds operated by the Chicago Laborers' District Council. The Funds assert that two construction companies and their principals have failed to contribute amounts owed under a collective bargaining agreement, including fringe benefit contributions, dues, liquidated damages, interest, and audit costs. R. 60, Pls.' Br. at 1. The Funds also argue that the two construction companies—RAI Concrete, Inc. and Mondi Construction, Inc.—should be treated as a single employer, and that the owners of these companies, Carmela Raimondi and Nicola Raimondi, respectively, are individually liable for any

amounts owed by either company, because they committed fraud in submitting knowingly false reports to the Funds. *Id.* at 14, 17.[1]

As this Opinion explains, the Funds are right that RAI and Mondi operate as a single employer, so summary judgment is granted to the Funds on that issue. But a trial is needed on the remaining issues (that is, how much money is owed and whether Carmela or Nicola Raimondi committed fraud). ERISA does not provide for a jury-trial right, *see CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011); *McDougall v. Pioneer Ranch Ltd. Partnership*, 494 F.3d 571, 576 (7th Cir. 2007); *Mathews v. Sears Pension Plan*, 144 F.3d 461, 468 (7th Cir. 1998); *Divane v. Northwestern University*, 953 F.3d 980, 993–94 (7th Cir. 2020), and the Funds have not made a jury demand on the Illinois common law fraud claims, *see* R. 39, First Am. Compl., so the remaining issues will proceed to a bench trial (short of a settlement). Separately, all claims against K&N Services, Inc. are dismissed; K&N was named in the operative complaint, R. 39, but the Funds now say that they "are no longer seeking to impose liability on Defendant K&N Services, Inc." Pls.' Br. at 1 n.1.

## I. Background

In deciding the Funds' motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving parties, that is, RAI, Mondi,

---

[1]This Court has jurisdiction over the federal claims in this case pursuant to Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. §§ 1132(e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act (LMRA) of 1947 as amended, 29 U.S.C. § 185(a), and the federal-question jurisdiction statute, 28 U.S.C. § 1331. Supplemental jurisdiction applies over the Illinois common law fraud claims. 28 U.S.C. § 1367.

Carmela Raimondi, and Nicola Raimondi. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

RAI Concrete and Mondi Construction are engaged in the concrete and construction trades in the Chicagoland area. R. 61, Pls.' St. of Mat. Facts (PSOF) ¶¶ 22, 34. RAI is owned by Carmela Raimondi, and Mondi is owned by her son, Nicola Raimondi. *Id.* ¶¶ 7–9, 19, 31.

The Funds are multi-employer benefit plans within the meaning of ERISA, 29 U.S.C. §§ 1002(3) and 37(A). PSOF ¶ 3. They provide pension, health, retiree, and other benefits to members of a local union, the Construction and General Laborers' District Council of Chicago and Vicinity. *Id.* ¶¶ 4, 10, 12. The Union and various construction companies in the Chicagoland region are signatories to collective bargaining agreements that require those companies to make specified contributions to the Funds for every hour that a union member works for one of the signatory companies. *Id.* ¶¶ 10–12; R. 62-2, PSOF Exh. B, James Fosco Affidavit, ¶ 3. The current operative collective bargaining agreement (CBA) became effective on June 1, 2017, but RAI has been a signatory to successive CBAs with the Union since 1992, and Mondi since 2012. PSOF ¶¶ 10, 21, 31. The CBA requires signatory employers to submit accurate monthly reports of each union-member employee's hours to the Funds, and to pay specified contribution amounts per hour worked. *Id.* ¶ 12. Contributions that are not timely received are assessed liquidated damages and interest. *Id.* None of the Defendants here contest these basic facts. R. 65, Defs.' St. of Mat. Facts (DSOF) ¶¶ 1–23, 31.

What is contested is the Funds' argument that RAI and Mondi underreported the hours and wages of numerous union members who worked for RAI, Mondi, or both between January 1, 2015 and February 28, 2019, and thus that both companies violated the CBA. Pls.' Br. at 10–11; PSOF ¶¶ 37–80. As the CBA authorizes, Fosco Aff. ¶¶ 4–6, the Funds commissioned a professional audit, which reviewed both RAI and Mondi's payroll records as well as sworn statements provided to the Union by the workers in question as to additional unpaid or unreported hours they worked. R. 62-4, Exh. D, Affidavit of Daniel Timm and Revised Audit, Audit Cover Letter at 2; PSOF ¶ 69–70 The auditor concluded that, in all, both companies owe $1,463,380.10 to the Funds, comprising the contributions that should have been paid as well as liquidated damages and interest at the rates dictated by the CBA. Timm Aff. at 4–5; PSOF ¶ 80.

The Defendants deny that they underreported hours anywhere near what the Funds say they owe. In their response, the Defendants maintain that "each of these employees were paid by check for all hours which they reported," and that "[a]ll hours which each of these laborers worked were accurately reflected on the reports submitted to the Union and the Funds by either Mondi and/or RAI." R. 64, Defs.' Br.at 4; R. 65, Defs.' Response to St. of Mat. Facts (DSOF) ¶¶ 17–25. They argue that the audit offered by the Funds is inaccurate and fails to reflect that both companies have made additional payments to the Union and the Funds since the audit was completed. Defs.' Br. at 5–6; DSOF ¶¶ 31–32. RAI contends that it in fact owes the Funds $382,822.65 and the Union $26,051.06 for the audit period. Defs.' Br. at 6; DSOF ¶ 33.

4

Mondi contends that it owes the Funds $34,800.04 and the Union $2,425.65 for the same time period. Defs.' Br. at 6; DSOF ¶ 34.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Financial Liability

The Funds' assertion that the Defendants owe $1,463,380.10 is premised in large part on the sworn statements of union-member employees. PSOF ¶¶ 37–68; R. 62-8, PSOF Exh. H, E. Acosta Declaration; R. 62-9, PSOF Exh. I, Vargas Declaration; R. 62-10, PSOF Exh. J, Almazan Declaration; R. 62-11, PSOF Exh. K, Sotelo Declaration; R. 62-12, PSOF Exh. L, Bravo Declaration; R. 62-13, PSOF Exh. M, Sanchez Declaration; R. 62-14, PSOF Exh. N, De Santiago Declaration; R. 62-15, PSOF Exh. O-1, Manriquez Declaration; R. 62-20, PSOF Exh. P, S. Acosta Declaration. The declarations of employees Edwin Acosta, Servando Vargas, Nicolas Almazan, Juan Jose Sotelo, Aniceto Bravo, Juan De Santiago, Roman Manriquez, Luis Sanchez, and Silvestre Acosta are complemented by contemporaneous handwritten records of hours worked or payroll records (or both). *Id.*

The statements vary in their particulars, but all attest to hours worked that were either entirely unpaid or paid below union scale and never reported to the Union or Funds. For example, according to the Funds, Juan De Santiago was employed by RAI from May 2016 through May 2018, but none of his hours from May or June 2016 were reported to the Funds. PSOF ¶¶ 37–38. He was then paid two days a week at union scale and the remaining days of the week in cash, and was sometimes not paid at all for hours that he worked. *Id.* ¶ 38. Same with Edwin Acosta, who was covered under the CBA for the entirety of his employment with RAI, but for whom RAI failed to report any hours worked for over one year, and later only paid him for, and

6

reported, 16 hours per week at union scale and the rest in cash at lower rates. *Id.* ¶¶ 41–42. Roman Manriquez's story is similar, though he attests that he eventually confronted the supervising foreperson; he later was paid 40 hours a week at union scale, but was paid below-scale in cash for any overtime hours worked, in violation of the CBA. *Id.* ¶¶ 48–49. Servando Vargas attests that he was paid by check, at scale for 40 hours a week, but regularly worked nearly 60 hours per week. *Id.* ¶ 53. Juan Jose Sotelo's story is similar to Vargas's. *Id.* ¶ 61. The statements of Edwin Acosta, Silvestre Acosta, Almazan, De Santiago, Manriquez, Sotelo, and Vargas, along with contemporaneous records, formed the basis of the auditor's assessment as to the number of hours that went unreported to the Funds (Sanchez's statement does not appear to have been incorporated into Timm's analysis). Timm Aff. ¶ 5.

Against this, the Defendants offer their own sworn affidavits. Nicola Raimondi's affidavit attests that he has reviewed the declarations of each employee, that each declaration is "untruthful," and that "[a]ll hours reported by [a given employee] were paid to him by check and his hours were accurately reflected on the reports submitted to the Union and the Funds by either Mondi and/or RAI." R. 67-1, Nicola Raimondi Aff. ¶¶ 5–13. Nicola's affidavit addresses each employee statement in a separate paragraph; the language of each paragraph is substantially similar, and, for the most part, does not try to rebut the particular *details* provided in each employee's declaration. Carmela Raimondi's affidavit addresses the employee statements only by saying, "Each of the reports submitted to the Union and the Funds have included all hours worked by each employee which performed covered work on behalf of RAI."

7

R. 67-2, Carmela Raimondi Aff. ¶ 3. These contentions are also supported in part by Nicola's and Carmela's depositions, during which they both testified that employees were never paid in cash. R. 62-6, PSOF Exh. F, Carmela Raimondi Deposition, 21:17–18; R. 62-7, PSOF Exh. G, Nicola Raimondi Rule 30(b)(6) Deposition, 17:18–19.

Finally, the Defendants submitted an affidavit from Erica Jensen, who is an administrative assistant for both RAI and Mondi, and is responsible for preparing the monthly reports to the Union and the Funds. R. 67-3, Erica Jensen Affidavit, ¶¶ 1–2. Jensen's assertions are, however, generic and conclusory:

> I have reviewed the Revised Audit Findings prepared by Daniel Timm. The Findings are inaccurate and do not correctly reflect the outstanding balances due the Union and Funds from RAI and Mondi. The Audit findings allegedly include unreported hours of Edwin Acosta, Silvestre Acosta, Nicolas Almazan, Juan G. D. Santiago [sic], Roman Manriquez, Juan J. Sotelo, and Servando Vargas. My records reflect that the hours of all the afore-stated laborers were accurately reported to the Union and the Funds and that there are no unreported hours for any of these individuals. In addition, the audit finds [sic] fail to reflect substantial additional payments made to the Union and the Funds after the audit was conducted.

Jensen Aff., ¶ 6. Jensen attests that her own calculations of the amounts owed are radically different: according to the defense, RAI owes the Funds $382,822.65 and the Union $26,051.06, and Mondi owes the funds $34,800.04 and the Union $2,425.65. *Id.* ¶¶ 7–8.

Armed with these affidavits, the Defendants argue that "this is a classic 'he said, she said' situation" that raises a genuine issue of material fact because one side's sworn testimony must be weighed against the other's, with the ultimate factual finding based on the trier of fact's belief as to who is more credible. Defs.' Br. at 12. The

8

Funds respond by labelling the Defendants' affidavits "self-serving" so as not to raise a genuine issue of material fact, R. 68, Pls.' Reply, citing *Laborers' Pension Fund v. RES Envtl. Servs.*, 377 F.3d 735 (7th Cir. 2004). But *RES* does not exactly stand for the proposition that a self-serving affidavit cannot raise a genuine issue of material fact at summary judgment; rather, the problem in *RES* was that the affidavit "provide[d] no information raising an issue of fact." *Id.* at 739.

Indeed, the Seventh Circuit has clarified its law on the role of so-called "self-serving affidavits" at summary judgment, holding that "[s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment," so long as the affidavit complies with Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 602, "both of which require that testimony be based on personal knowledge." *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014). Indeed, "[d]eposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving," and thus that term "must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (citing *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003)). So the self-serving nature of the defense's affidavits is not a problem.

What *is* a problem is that the affidavits of Jensen and Carmela are too conclusory to raise real issues of material fact. *See RES Environmental Services*, 377 F.3d at 739; *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) ("The object of [Fed. R. Civ. P. 56(e)] is not to replace conclusory allegations of the complaint or

9

answer with conclusory allegations of an affidavit."). Both of the affidavits simply offer high-level, generalized denials of the Funds' evidence and the employee attestations. One way to understand this is to envision Jensen or Carmela testifying as to the contents of the affidavit at trial—and leaving it at that. There would be no way for a reasonable jury to credit the testimony with just bare conclusions to rely on. Indeed, the absence of any more explanation from these witnesses would render the testimony so vague as to be inadmissible.

Nicola's affidavit is different. As the supervisor of the employees, *see* N. Raimondi Aff. ¶ 23, he would have personal knowledge as to their hours, method of payment, and so on. *Id.*; *see also Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005 ("[A] witness's potential self-interest in testifying about matters for which he or she has direct knowledge goes to the weight and credibility of the testimony, not to its admissibility. We have repeatedly stated that the record may include a so-called 'self-serving' affidavit provided that it is based on personal knowledge[.]").This solid foundation of personal knowledge of those categories of facts would provide the factfinder enough evidence on which to reject the Funds' contentions. Yes, at the trial stage, the factfinder might look skeptically on the disavowals, given the details provided by the Union employees. But at the summary judgment stage, the Court must give the Defendants the benefit of the doubt and draw reasonable inferences in the defense's favor. Nicola's affidavit, set against the affidavits of the union-member employees, creates a credibility contest, and the Court may not make credibility determinations

at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Payne*, 337 F.3d at 770.

It is worth noting for both sides that, at trial, the Defendants will not enjoy any of these summary judgment presumptions. Either Nicola, on the one hand, or the entire group of employees, on the other, is wrong—and perhaps is lying. The trier of fact will make a credibility determination by a preponderance-of-the-evidence standard, with neither side receiving the benefit of any inference. *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 622 (1993). For now, however, summary judgment on the extent of the underreporting is denied.

### B. Single Employer

The Funds have moved for summary judgment on the claim that RAI and Mondi operated as a single employer. Pls.' Br. at 12. Because neither RAI nor Mondi has raised any genuine issue of material fact as to the integration of their operations, the Court grants summary judgment to the Funds on this issue. The upshot of this decision is that RAI and Mondi will be jointly liable for each other's unpaid contributions to the Funds.

Under ERISA's single-employer doctrine, "when two entities are sufficiently integrated, they will be treated as a single entity for certain purposes." *Moriarty v. Svec*, 164 F.3d 323, 332 (7th Cir. 1998) (citing *Radio and Televisions Broadcast Technicians Local Union 1264 v. Broadcast Service*, 380 U.S. 255, 256 (1965)). A four-factor test determines whether two entities "comprise[] a single integrated

11

enterprise": "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Id.* Like so many sibling factor-based tests in the law, "[n]o one of these factors is conclusive; instead, the decisionmaker must weigh the totality of the circumstances." *Trustees of Pension, Welfare and Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Electric Co., Inc.*, 995 F.2d 785, 788 (7th Cir. 1993).

RAI and Mondi resist application of the single-employer test altogether on the grounds that the purpose of the test is to prevent employers who are signatories to a CBA from circumventing their obligations by forming, and paying union-member employees through, related entities who are not signatories to the same CBA. Defs.' Br. at 7–8. It is true that the single-employer doctrine is most often applied in that factual context. *See, e.g.*, *Lippert Tile Co. v. Int'l Union of Bricklayers and Allied Craftsmen Dist. Council of Wis.*, 724 F.3d 939, 946 (7th Cir. 2013); *Bd. of Trustees of the Pipe Fitters Ret. Fund, Local 597 v. Am. Weathermakers, Inc.*, 150 F. Supp. 3d 897, 905 (N.D. Ill. 2015); *RKN Concrete Constr., Inc. v. Laborers' Pension Fund*, No. 13 C 9153, 2015 WL 1888513, at *7 (N.D. Ill. Apr. 24, 2015). But the Defendants cite no cases in support of the proposition that single-employer liability is *only* applicable in the signatory/non-signatory context, and the Seventh Circuit cases on point do not at all insinuate that that particular fact pattern is a prerequisite. And applying the single-employer doctrine to two signatories of a CBA actually promotes the doctrine's underlying rationale: to prevent an employer from dodging its funding responsibilities by operating a superficially separate company. It matters not to that rationale

12

whether the other company is not a CBA signatory at all or, instead, is directly responsible for relatively less in contributions. With this argument rejected, the Court moves on to the four-factor test.

**1. Interrelation of Operations.** First, the operations of RAI and Mondi are interrelated. They both perform concrete work in the Chicagoland region. PSOF ¶¶ 22, 34. RAI is headquartered, and Mondi runs its day-to-day operations, out of the very same yard at 1827 Blackhawk Drive, West Chicago, Illinois. *Id.* ¶¶ 20, 32, 33. They share the same administrative assistant, Erica Jensen. *Id.* ¶ 33. In response, the Defendants assert that RAI and Mondi split rental and utility costs for the Blackhawk yard, have separate telephone numbers, and have their own equipment. R. 65, Defs.' St. of Add'tl Mat. Facts (DSOAF), ¶¶ 7, 8, 14. But in trying to distance itself from the Blackhawk address, Mondi alleged that it operates out of 390 East Devon, Suite 101, Roselle, Illinois. DSOF ¶ 32. That address, however, is in fact the office of RAI's and Mondi's accountant. *Id.* ¶¶ 32–33. The Defendants also offer a distinction as to the clients of their concrete work: RAI performs jobs for the Illinois Department of Transportation whereas Mondi primarily works on municipal projects. DSOAF ¶ 8 That distinction does not weigh heavily against interrelation of operations, because the overlap in employees (as detailed below) is extensive. Both companies are run by substantially the same people, doing substantially the same work, out of the same location.

**2. Common Management.** Second, RAI and Mondi share common management. Nicola Raimondi is both the owner of and crew foreman for Mondi—and at the

13

same time, he is a supervisor at RAI, serving as a foreperson and directing the other forepersons. PSOF ¶¶ 25, 26, 29, 31, 36. He bids jobs for both companies. *Id.* ¶ 24. Indeed, the employees who submitted sworn statements all consider Nicola Raimondi to be the owner of both RAI and Mondi, and perceive Carmela Raimondi to be an office worker. *Id.* ¶¶ 24, 25, 28. Aside from the day-to-day supervision by Nicola at both companies, RAI employees come to *Nicola* with any questions about their pay. *Id.* ¶ 27. Carmela is not aware of the day-to-day details of how RAI is run, including how employees are assigned to crews, who makes decisions as to what work will be performed each day, where employees are to report, or how employee hours are reported. *Id.* ¶ 28.

Against this, the Defendants assert that Carmela's husband is the primary bidder for RAI (though they concede that Nicola participates in making bids for RAI) and that Carmela is the final decision-maker as to whether RAI will accept any particular job. DSOAF ¶ 5. Carmela also attests that "I have met with each of the employees, including laborers that work or have worked for RAI, and have informed each of them that I am the owner of RAI." C. Raimondi Aff. ¶ 4. Also, RAI and Mondi have separate bank accounts, workers' compensation policies, and payroll. DSOAF ¶¶ 10, 15, 16, 26–27. Because Carmela is the ultimate decision-maker at RAI, the Defendants argue, it cannot be said that the companies are under common management. Viewing the evidence in the light most favorable to the Defendants, there is enough evidence to find that Carmela retains formal, ultimate control over RAI. But it is not genuinely disputed that Nicola manages the day-to-day operations of both RAI and

14

Mondi. Nicola need not be the sole decision-maker or the ultimate one in order for the common-management factor to weigh heavily in favor of single-employer liability.

**3. Labor Relations.** Third—and most importantly in this case—there is centralized control of labor relations between RAI and Mondi. As just discussed, Nicola supervises all job-site employees at *both* companies. And it is crucial that the two companies have the *same* employees in common, often reporting the same people to the Funds in the same months. PSOF ¶ 35. Most tellingly, all of the employees' declarations say that they worked for *RAI*, even if they were at times paid by Mondi. *Id.* ¶¶ 37, 40, 41, 45, 47, 50, 52, 55, 56, 58, 59, 62, 63, 65, 66, 68.

In response, the Defendants assert that, despite the overlap, the two companies did not always hire exactly the same employees. DSOF Resp. ¶ 35. Beyond this, the Defendants point to Nicola's and Carmela's affidavits that "categorically" denied the truthfulness of the employees' affidavits; to the defense's way of thinking, this raises an issue of fact on whether the employees worked, or believed they worked, for RAI even if they were paid by Mondi. Defs.' Br. at 11; DSOAF ¶¶ 17–25. Finally, the Defendants say, because both companies are signatories to the same CBA, and because they treated all employees appropriately under the CBA, this is essentially a moot point. Defs.' Br. at 11.

It is true that Nicola's affidavit raised a genuine issue of material fact on whether the employees were paid the proper amounts and whether they were paid by cash or check. But the defense's blanket challenge against the employee affidavits does not raise a genuine issue of material fact whether the employees believed, based

15

on their employment conditions, that RAI was their employer. *See, e.g.*, E. Acosta Decl. ¶ 11 ("I have always been paid by both Rai and a Company called Mondi Construction. I am typically paid two days a week by Mondi, however I only ever worked for Rai."). The defense has no personal knowledge to rebut the employee declarations on that specific point. The undisputed fact that Nicola supervised crews and forepersons at both companies—including the very same employees working purportedly for both companies—is more than enough to establish, even when viewing the evidence in the Defendants' favor, that labor relations were centralized between the two.

**4. Common Ownership.** The final consideration is whether the two companies have common ownership. The Funds do not argue this point in their opening brief, but the Defendants argue that common ownership simply does not apply where Carmela owns 100% of RAI and Nicola owns 100% of Mondi. DSOAF ¶¶ 2, 5–6, 11, 13. The defense cites a district court case holding that, although ownership by members of the same family can be "evidence of common ownership … that factor alone cannot be enough" to find that the companies are a single employer." *Am. Weathermakers*, 150 F. Supp. 3d at 907; *see also Central States, Southeast and Southwest Area Pension Fund v. Sloan*, 902 F.2d 593, 597 (7th Cir. 1990). No one disputes that Carmela is Nicola's mother. DSOF ¶ 9. But no one disputes that, on paper, they each own separate companies. This factor is evenly balanced. But in the context of the other three factors weighing heavily in support of a finding of single-employer liability, the familial relationship between Carmela and Nicola at least emphasizes the other myriad ways in which the two companies operate as one.

For all these reasons, the Funds' motion for summary judgment is granted on the claim that RAI and Mondi are a single employer for ERISA purposes. Given the high degree of similarity in their work, the entwinement of their operations, and the fact that Nicola supervises the day-to-day work of both companies, they are a single employer for purposes of having to pay the contributions of the other.

## C. Fraud

Finally, the Funds have moved for summary judgment on the claim that both Carmela and Nicola Raimondi committed fraud by knowingly submitting false reports to the Funds, and thus should personally be held liable for any amounts that the companies are found to owe. Pls.' Br. at 17. Not surprisingly for a state-of-mind inquiry like fraud, the Defendants have raised a genuine issue of material fact on whether they acted with intent to defraud, precluding summary judgment on this claim.

"Under Illinois law, to succeed in an action for fraud a plaintiff must prove: (1) that the defendant made false statements of material fact, (2) knowing that they were false, and (3) intending that the plaintiff would rely on them; (4) that plaintiff did rely, (5) that this reliance was justified, and that (6) plaintiff suffered damage as a result." *General Motors Acceptance Corp. v. Central National Bank of Mattoon*, 773 F.2d 771, 778 (7th Cir. 1985).

On the first element, as discussed earlier, there remain genuine issues of material fact on whether the reports that RAI and Mondi submitted to the Funds were false, and by extension, whether or not they have paid the appropriate amount of

17

contributions. So this first element of the fraud claim has not been established conclusively enough for summary judgment purposes.

What's more, Carmela's and Nicola's state of mind—that is, that they knew the contribution reports to be false—cannot be conclusively established at summary judgment, given their denials of a guilty state of mind. For the Funds to succeed, they would need to show that either Carmela or Nicola submitted statements to the Funds that they *knew* to be false, and intended that the Funds rely on those statements. At the summary judgment stage, with all inferences drawn in favor of the Defendants, the Court must accept the Defendants' averments (which are based on their personal knowledge) that they did not know the reports were false (if the reports even are false) and that any mistakes in the reports were inadvertent. At the summary judgment stage, the Court cannot discredit the assertions of innocence, which again are by definition based on personal knowledge. (The Court observes once more that, at the bench trial, the Defendants will no longer get the benefit of inferences drawn in their favor.)

### IV. Conclusion

The Funds' motion for summary judgment, R. 59, is granted on the claim that RAI and Mondi operate as a single employer; the motion is otherwise denied. Defendant K&N Services, Inc., is dismissed from the case. With this decision in hand, the parties shall initiate settlement discussions (they may jointly contact the courtroom deputy if they want a settlement referral to the magistrate judge). By September 20, 2021, the parties shall file a status report confirming that settlement negotiations

have begun, and an estimated timeline for the conclusion of the negotiations. The tracking status hearing of September 24, 2021, remains in place for now.

                                            ENTERED:

                                                   s/Edmond E. Chang
                                          Honorable Edmond E. Chang
                                          United States District Judge

DATE: September 11, 2021